IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of Funds, ) ) ) ) ) ) ) ) | |
| Plaintiffs/Counter-defendants, ) | |
| ) | No. 07 C 3443 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| EVERLAST CONCRETE, INC., an Illinois corporation, and, ) ) ) | |
| Defendant/Counter-plaintiff, ) | |
| ) | |
| VINCE SCHREMENTI, individually, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

In a first amended complaint plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and James S. Jorgensen, Administrator of the Funds have sued defendant Everlast Concrete Inc. for failure to submit benefit contributions, failure to pay union dues, failure to pay wages, and failure to submit to an audit. In Count VII, plaintiffs allege fraud against Everlast's President and sole shareholder Vince Schrementi. Count VIII seeks to pierce the corporate veil. Defendant Everlast counterclaims against plaintiffs, alleging a secondary boycott in violation of 29 U.S.C. § 158(b)(4)(ii)(B). Schrementi has moved to dismiss Counts VII and VIII of the complaint, the only counts directed at him, for failure to state a claim and

failure to pled fraud with sufficient particularity. Plaintiffs have moved to dismiss the counterclaim for failure to state a claim. For the reasons that follow, Schrementi's motion to dismiss is denied. Plaintiffs' motion to dismiss the counterclaim is granted.

**FACTS**

Defendant Everlast operates as a concrete contractor. Schrementi is its president and sole shareholder. Everlast is a party to a collective bargaining agreement with the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). Pursuant to that collective bargaining agreement ("CBA") Everlast agreed to pay an hourly rate to union members and agreed to make further specified contributions to plaintiffs based on actual hours worked.

Plaintiffs allege that Everlast has breached the CBA by paying union members in cash for certain hours worked and not reporting those hours to the Union or the Funds. By so doing, Everlast is alleged to have failed to make proper contributions to plaintiffs.

Schrementi's Motion to Dismiss Counts VII and VIII

In Count VII, plaintiffs allege fraud against Schrementi. Specifically, plaintiffs allege that Schrementi and Everlast have engaged in a systematic conspiracy to defraud plaintiffs of benefit contributions and dues by intentionally paying employees in cash for certain hours worked, and then intentionally failing to report those hours and submitting false reports to the Funds. Everlast has admitted that the cash payments were intentionally excluded from Schrementi's tax records to avoid disclosing those payments to plaintiff, and to avoid paying the appropriate wages, dues and benefit contributions. Plaintiffs have also alleged that Schrementi

has failed to report any hours on behalf of individuals who were performing covered work but were not disclosed to the plaintiffs or the Union and were hidden from the Union on job sites.

Schrementi argues that Count VII fails to state a claim for fraud because it does not and cannot allege loss causation and justifiable reliance, two elements of a viable fraud claim. See Martin v. Heinhold Commodities, Inc., 163 Ill. 2d 33, 59-60 (1994). According to Schrementi, the loss suffered by plaintiffs is the non-payment of Everlast's contributions owed under the CBA. Schrementi argues that plaintiffs suffered this loss not because plaintiffs relied on any misrepresentation by Schrementi, but simply because Everlast failed to pay the contributions it was required to pay under the CBA. Because the reports were understated, Schrementi argues that plaintiffs did not pay and could not have paid any more in benefits to those employees that it would have otherwise paid if the reports had been accurate. Thus, Schrementi argues that even if plaintiffs relied on the misleading reports, they suffered no damage as a result of that reliance. Absent any such damage, Schrementi argues that plaintiffs are limited to their breach of contract claim.

This argument, as plaintiffs correctly point out, misapprehends the manner in which multi-employer trust funds such as plaintiffs operate. The employer and Union enter into a CBA that requires the employer to pay certain amounts per employee to a pension fund and to a health and welfare fund. The employer's participation guarantees that the employer's employees will receive the promised benefits. Those funds, which cover multiple employers, determine how much to charge each employer on a per-employee basis by using actuarial analyses which assume that every employer is paying contributions on every employee within a particular job classification. If the funds knew that the employer was not going to contribute for all employees

3

within that given job classification, the employer would not be allowed to participate "because to do so would be unsound from an actuarial perspective . . .." Central States, Southeast and Southwest Areas Pension Funds v. Transport, Inc., 991 F. Supp. 1003, 1008 (N.D. Ill. 1998).

By devising an alleged scheme to hide from plaintiffs the actual amounts of contributions due, Schrementi allegedly accomplished his goal of receiving full benefits for his employees without contributing to the actual pot of money from which the benefits would be paid. By so doing, Schrementi has rendered the actuarial assumptions unsound, which ultimately will leave plaintiffs with unfunded obligations. By allegedly misrepresenting the actual amount due, rather than simply failing to pay them, Schrementi has managed to prevent plaintiffs from taking action either to recover the amounts due, or to shut Everlast down, thereby preventing further loss. See e.g. Trustees of the Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc., 886 F. Supp. 1134, 1142-43 (S.D. N.Y. 1995). Count VII, therefore, alleges both reliance by plaintiffs on the alleged misrepresentations by Schrementi and damages proximately caused by those misrepresentations. Accordingly, Schrementi's motion to dismiss Count VII is denied.

Schrementi has also moved to dismiss Count VIII, which seeks to pierce the corporate veil. The count alleges generally that Schrementi disregarded Everlast's corporate formalities and treated the company's assets as his own. Specifically, the count alleges that Schrementi used the corporate assets to construct his own personal home, and that the company was undercapitalized. These allegations are sufficient to put Schrementi on notice of plaintiffs' claims and certainly contain enough information to suggest that relief is plausible. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). Accordingly, Schrementi's motion to dismiss Count VIII is denied.

Plaintiffs' Motion to Dismiss the Counterclaim

Defendant Everlast has brought a counterclaim against plaintiffs, alleging that plaintiffs have engaged in a secondary boycott in violation of 29 U.S.C. § 158(b)(4)(ii)(B). Specifically, Everlast alleges that plaintiffs sent a letter to certain of Everlast's clients, indicating that Everlast had failed to compensate its employees in accordance with the terms of Everlast's obligations under CBA and plaintiffs' respective agreements and declarations of trusts. According to Everlast, the letter encouraged its clients to withhold payments owed to Everlast, and the intent and effect of the letters was to illegally threaten, coerce and force the clients to cease doing business with Everlast in violation of § 158(b)(4)(ii)(B).

Plaintiffs have moved to dismiss the counterclaim for failure to state a claim, arguing that even if plaintiffs' actions could be considered threatening or coercive (which plaintiff correctly argues they cannot), the actions constitute primary activity not in violation of § 158(b)(4)(ii)(B), which provides that a labor organization or its agent commits an unfair labor practice if it threatens or coerces any person engaged in commerce for the purpose of forcing that person to cease doing business with any other person, or forcing any other employee to recognize a labor organization. The section contains a proviso, however, that provides that nothing contained in the section shall be considered to make unlawful, where not otherwise unlawful, any primary strike or primary picketing.

In their motion, plaintiffs argue that the actions in question constitute lawful primary activity. To support this argument, plaintiffs attach a copy of Everlast's short-form agreement with the Union binding Everlast to the agreement between the Union and the Concrete

Contractor's Association of Chicago ("CCA Agreement"). The CCA Agreement, also submitted by plaintiffs, provides that:

> The Union reserves its right, and it shall not be a violation of this Agreement, for the Union to strike, picket, and/or withdraw its employees from any Employer who fails to pay wages and fringe benefits as required under this Agreement.

Additionally, Everlast has alleged that it entered into contracts with Scurto Cement Construction, Ltd., Pepper Construction Company and Sollit Construction Co. Each of these companies signed short-form agreements with the Union containing subcontracting clauses that provide that any employer who contracts or sublets any of the work coming within the jurisdiction of the Union shall assume the obligations of any subcontractor for payment of employees' wages and other benefits. Plaintiffs have attached those contracts as exhibits to their motion.

Plaintiffs argue that the subcontracting clauses, which merely require the subcontractors to meet the equivalent of Union standards in order to protect the wages and working standards of the contracting employer's employees, are justified as serving to eliminate an incentive for the employer to contract out Union work. Therefore, such clauses are lawful under the Act. See George Ryan Co., Inc., et al. v. NLRB, 609 F.2d 1249, 1254 (7th Cir. 1979). Because such clauses seek to protect the bargained-for-wages and working standards of the bargaining unit, they are considered primary. Orange Belt District Council of Painters v. NLRB, 328 F.2d 534, 538 (D.C. Cir. 1964). Plaintiffs argue that because the subcontracting clauses are primary, any action taken pursuant to those clauses are primary and cannot support a claim of secondary violation under § 158(b)(4)(ii)(B).

Everlast's only response to this argument is that it relies on matters outside the pleadings and must be ignored. The exhibits attached to plaintiffs' motion, however, are all expressly referenced in Everlast's counterclaim or the exhibits attached thereto. When a complaint expressly references another document, the court can consider the referenced document in ruling on a motion to dismiss. 188 LLC v. Trinity Industries, Inc., 300 F.3d 730, 735 (7th Cir. 2002). The documents in question, such as Everlast's agreement with the Union are referenced in and central to its counterclaim. Indeed, the counterclaim alleges that Everlast had been making payment and contributions in compliance with the agreement with respect to the jobs alleged. The client's agreements with the Union are referenced in the allegedly offending letter and are central to Everlast's claim that the letter constitutes a secondary violation. Therefore, the court can consider the documents. Id. Once considered, it appears that Everlast has no argument that the conduct in question is not primary and lawful.

Moreover, the court agrees with plaintiffs that the letter in question contains no threat or economic coercion. The letter provides:

> I am Fund Counsel for the Laborers Pension fund and Laborers Welfare Fund for the Health and Welfare Department of the Construction and General Laborers District Council of Chicago and Vicinity ("Funds"). I have been advised that your Company has recently subcontracted work to Everlast Concrete, Inc. I am writing to advise that Everlast Concrete has systematically and intentionally failed to pay fringe benefit contributions and wages to its employees in accordance with the terms of its obligations under the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. As you are aware, under the terms of your Agreement your Company may be held liable for any unpaid wages and fringe benefit contributions not paid by your subcontractors. Accordingly, your Company may want to take all steps necessary to protect your interest on any projects including, but not limited to, the Wal-Mart project located in Montgomery, Illinois, until the Funds can verify that all fringe benefit contributions and wages have been paid in accordance with Everlast's obligations under the terms of the Agreement and Trust Documents.

As plaintiffs note, the letter merely informed the recipient that Everlast had failed to pay contributions and wages and reminded the recipient of its obligations under its own contract. The letter made no unlawful threat and contained no unlawful coercion. See Teamsters Local 886 (Stephens Company), 133 NLRB 1393, 1396 (1961) (Letter informing a secondary employer that a picket may take place against a primary employer held to be non-threatening). Accordingly, for the reasons stated above, plaintiffs' motion to dismiss the counterclaim is granted.

## CONCLUSION

As set forth above, Schrementi's motion to dismiss Counts VII and VIII is denied. Plaintiffs' motion to dismiss the counterclaim is granted. This matter is set for a report on status November 29, 2007, at 9:00 a.m.

**ENTER:     November 16, 2007**

_____
**Robert W. Gettleman
United States District Judge**